IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROY ALBERT LEWIS,

    Defendant.

      No. C 05-00638 SI

      **ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL**

On January 19, 2007, the Court heard argument on defendant's motion for judgment of acquittal or for new trial. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court DENIES defendant's motion.

## BACKGROUND

Defendant Roy Albert Lewis was convicted by jury of one count of conspiracy to defraud the United States by impeding and impairing the Internal Revenue Service (IRS) in the ascertainment, computation, assessment, and collection of federal income taxes, in violation of 18 U.S.C. § 371; and four counts of income tax evasion in violation of Section 7201 of Title 26 of the United States Code. Defendant now moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or for a new trial pursuant to Federal Rule of Criminal Procedure 33.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 29 states, in relevant part, that "[i]f the jury returns a verdict of guilty . . . , a motion for judgment of acquittal may be made . . . within 7 days after the jury is

discharged or within such further time as the court may fix during the 7-day period." On such motion, "the court may . . . set aside the verdict and enter judgment of acquittal." Fed. R. Crim. P. 29. In reviewing a verdict for sufficiency of the evidence, a court must draw all inferences and credibility determinations in the light most favorable to the prosecution, and determine whether any rational trier of fact could have concluded that the essential elements of the crime were established beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991).

Federal Rule of Criminal Procedure 33 provides that "[o]n a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require." The court's power to grant a motion for a new trial is "much broader" than its power to grant a motion for acquittal. *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992).

**DISCUSSION**

**I.      Judgment of Acquittal**

**A.      Subjective good faith belief defense**

Defendant first argues that the government failed to offer evidence disproving his good faith belief that his actions were legal. The Court disagrees.

"Proof of willfulness is essential to support a conviction under 26 U.S.C. § 7201." *United States v. Bishop*, 291 F.3d 1100, 1106 (9th Cir. 2002) (citing *United States v. Bishop*, 412 U.S. 346, 361 (1973)). "Willfulness is also an element of conspiracy to defraud the United States; the government must prove 'the existence of an agreement to accomplish an illegal objective, an overt act in furtherance of the objectives of the conspiracy, and intent on [the] part of the conspirators to agree, as well as to defraud the United States.'" *Id.* (quoting *United States v. Crooks*, 804 F.2d 1441, 1448 (9th Cir. 1986)). "Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.* (quoting *Cheek v. United States*, 498 U.S. 192, 201 (1991)). "Carrying this burden requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any

2

of the provisions of the tax law. This is so because one cannot be aware that the law imposes a duty upon him and yet be ignorant of it, misunderstand the law, or believe that the duty does not exist." *Id.*

Thus defendant's argument that the government "failed to prove that Lewis did not have a subjective good faith belief that he was complying with the tax code," Mot. at 4:9-10, is simply a more complicated way of saying that the government failed to establish the element of willfulness. The government provided substantial evidence of willfulness at trial, including that:

- Defendant engaged in a lengthy pattern of failing to report income over the years of the alleged offenses, sending over $300,000 in income to a secret offshore account. *See* Govt. Exs. 1-8, 24, 53-55, 73, 78, 79, 83, 88, 97, 151, 154, 167-169, 180-184, 191, 192, and 196; *United States v. Garner*, 611 F.2d 770, 776 (9th Cir. 1980) ("[t]he element of willfulness may be inferred by the jury from evidence of a consistent pattern of under-reporting large amounts of income.").

- Defendant participated in creating false invoices and false loan documents in order to conceal his income and justify fraudulent deductions. *See* Govt. Exs. 1-8, 24, 53-55, 73, 78, 79, 83, 88, 97, 151, 154, 167-169, 180-184, 191, 192, and 196; *Spies v. United States*, 317 U.S. 492, 499 (1943) ("affirmative willful attempt may be inferred from conduct such as . . . false invoices or documents . . . concealment of assets . . . ."); *United States v. Wilson*, 118, F.3d 228, 236 (4th Cir. 1997) (preparation of false, backdated documents is evidence of willfulness); *United States v. Walker*, 896 F.2d 295, 298 (8th Cir. 1990) (submission of false invoices as evidence of willfulness).

- Defendant concealed his assets using a secret offshore account, "Tyborian Relay," *see* Govt. Exs. 79, 83, 88-92, 101, 115-117, 151, 154), and a "corporation sole" into which he transferred his house (Govt. Exs. 211-212). *See Spies*, 317 U.S. at 499 ("affirmative willful attempt may be inferred from conduct such as . . . concealment of assets . . ."); *United States v. Daniel*, 956 F.2d 540, 542 (6th Cir. 1992) (using nominees to hide assets is evidence of willfulness).

- Defendant refused to cooperate with audit procedures. *See* Reporter's Transcript ("RT") at Vol. 2, p. 336:14-338:5; Govt. Exs. 43, 48, 50.

3

- Defendant sent harassing letters to the IRS and the Agent conducting his audit. RT at Vol. 2, p. 343:6-346:14; Govt. Exs. 43, 48, 50.
- Defendant claimed that the tax laws did not apply to him. Govt. Exs. 43, 48, 50.
- Defendant disclosed the existence of his offshore account in 1997 and 1998, but starting in 1999 began lying about its existence and his involvement in it. RT at Vol. 3, p. 419:10-421:1; Govt. Exs. 118, 120, 122, 124, 127.

The Court finds that this evidence was sufficient to allow a reasonable juror to conclude that defendant acted willfully, and without a good faith belief in the lawfulness of his actions.

### B. Evidence of Conspiracy

Defendant also argues that the government failed to prove beyond a reasonable doubt that defendant participated in the broad conspiracy alleged in the indictment. Title 18, United States Code, Section 371 provides, in part, that:

> "If two or more persons conspire . . . to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, . . ." each shall be guilty of an offense against the United States.

18 U.S.C. § 371.

Defendant now argues that "at best the evidence at trial put Lewis in a small conspiracy with the Tower principals, with a narrow conspiratorial agreement, not the grand conspiracy charged in the indictment." Mot. at 10:18-21. The Court disagrees. In *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004), the Ninth Circuit described how the government proves an overarching conspiracy, stating:

> A single conspiracy can only be demonstrated by proof that an overall agreement existed among the conspirators. Furthermore, the evidence must show that each defendant knew, or had reason to know, that his benefits were probably dependent upon the success of the entire operation. Typically, the inference of an overall agreement is drawn from proof of a single objective . . . or from proof that the key participants and the method of operation remained constant throughout the conspiracy. The inference that a defendant had reason to believe that his benefits were dependent upon the success of the entire venture may be drawn from proof that the coconspirators knew of each other's participation or actually benefitted from the activities of his coconspirators.

*Id.* at 1226 (quoting *United States v. Duran*, 189 F.3d 1071, 1078 (9th Cir. 1999)).

Here, the government presented sufficient proof at trial "that the coconspirators knew of each

4

1 other's participation or actually benefitted from the activities of his coconspirators." *Id.* For example, 2 the Tower members attended meetings where the scheme was described to them, and they were told 3 their precise role in the scheme. The scheme depended on the existence of the Tower organization, 4 which issued the false invoices, transferred the money offshore, then transferred the money back to the 5 participants through a phony insurance company. *See* Govt. Exs. 110, 148. The members therefore 6 knew that their scheme depended on Tower, and that Tower's existence depended on the members' 7 participation. The jury thus had ample evidence to infer that defendant "had reason to believe that his 8 benefits were depend upon the success of" Tower. *Fernandez*, 388 F.3d at 1226. This evidence also 9 constituted proof that Tower had "a single objective" – hiding income from the IRS – and "that the key 10 participants and the method of operation remained constant." *Id.* The scheme was described in the same 11 way to all the Tower members. *See* Govt. Ex. 148. The jury therefore had sufficient evidence to imply 12 that there was an overall agreement between the Tower participants.[1] *See* 388 F.3d at 1226.

## II.  New Trial

### A.  Co-Conspirator Statements

Defendant now argues that because the government failed to establish a broad conspiracy, the statements of defendant's co-conspirators should not have been admitted. *See United States v. LiCausi*, 167 F.3d 36, 50 (1st Cir. 1999), *cert denied*, 528 U.S. 827 (1999) ("we think the statements were not made to advance the conspiracy and were inadmissible. . . . While these statements may have been improperly admitted, we do not think they worked such prejudice that a new trial is necessary."). In particular, defendant complains of the admission into evidence of the 1998 Tower Conference tape excerpts, and the testimony of Mr. Bekins.

"Under [Federal Rule of Evidence] 801(d)(2)(E), the statement of a co-conspirator is admissible

---

[1] Other evidence of the conspiracy included that: Tower members were all told to lie about the ownership of their offshore accounts to the IRS, and to make false excuses for not producing records of the accounts; Tower members were all told not to mention the offshore accounts to anyone; Tower stressed to all members the importance of avoiding attention from the IRS; Tower explained to all members how Tower would issue fake invoices to the members to make Tower appear to be a legitimate company; Tower members were told to "hope" that the IRS did not catch them within three years of committing fraud. *See* Govt. Exs. 110, 148.

5

against the defendant if the government shows by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy." *United States v. Bowman*, 215 F.3d 951, 960-61 (9th Cir. 2000) (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). The existence of these elements is a preliminary question of fact which is to be determined by the court, under Federal Rule of Evidence 104. *See Bourjaily*, 483 U.S. at 175.

As discussed above, the government provided ample evidence of defendant's participation in a conspiracy spanning all of the Tower members. The Court was therefore wholly reasonable in finding that the statements of other Tower participants were admissible co-conspirator statements under Rule 801(d)(2)(E).

### B.     Jury instructions

On a challenge to jury instructions, the Court is tasked with deciding "whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999) (citing case). Defendant challenges the jury instructions given on two subjects: reliance upon a qualified tax accountant, and conspiracy.

#### 1.     Good faith reliance upon a qualified tax accountant

Defendant argues that the Court should not have given the jury an instruction on the defense of good faith reliance on a qualified tax accountant. Doing so, they contend, confused the jury as to which party had the burden to prove willfulness.

"Good faith reliance on a qualified accountant has long been a defense to willfulness in cases of tax fraud and evasion." *Bishop*, 291 F.3d 1100, 1106 (9th Cir. 2002) (citing cases). "[A] defendant may rebut the Government's proof of willfulness by establishing good faith reliance on a qualified accountant after full disclosure of tax-related information." *Id.* at 1106-07.

At the government's request, the Court gave the following instruction to the jury:

> A good faith reliance upon the advice of a qualified tax accountant is also a complete defense to the charges because such a reliance is inconsistent with the intent required to commit these crimes. In order for the defendant to rely on the advice of a qualified tax accountant in good faith, the defendant must (1) make full and complete disclosure of all tax-related information, (2) to a qualified tax

6

accountant, (3) actually rely upon and follow the advice that was provided, (4) without reason to believe that the advice was not correct.

Defendant argues that this instruction, given over defendant's objection, "had the inevitable effect of confusing the jury about the elements of good faith and about the burden of proof on good faith." Mot. at 15:9-10. Defendant suggests that this instruction led the jury to believe that the government did not have the burden of proving willfulness; that instead, the defendant had the burden of disproving willfulness, and had to do so by fulfilling the elements of the good faith reliance defense.

The Court disagrees with defendant's assessment of the impact of this instruction on the jury. The jury instructions were clear as to which party had the burden of proof on the element of willfulness. The instruction on conspiracy stated, in pertinent part:

> In order for the defendant to be found guilty of the crime of conspiracy under Title 18, United States Code, Section 371, the government must prove each of the following elements beyond a reasonable doubt: . . . . (5) The defendant entered into the conspiratorial agreement willfully and without a good faith belief that he was acting lawfully. An act is done willfully if done voluntarily and intentionally with the purpose of violating a known legal duty.

The instruction on tax evasion stated, in pertinent part:

> In order for defendant to be found guilty of any one of those counts, the government must prove for that count each of the following elements beyond a reasonable doubt:
>
> . . . .
>
> Fourth, that in attempting to evade or defeat such additional tax, the defendant acted willfully. An act is done willfully if done voluntarily and intentionally with the purpose of violating a known legal duty; and
>
> Fifth, that the defendant did not have a good faith belief that he was complying with the provisions of the tax laws. A belief may be in good faith even it if is unreasonable.

The instruction on "Good Faith - Defined" stated, in pertinent part:

> If a person acts without reasonable grounds for belief that his conduct is lawful, it is for you to decide whether that person has acted in good faith in order to comply with the law or whether that person has willfully violated the law. In determining whether or not the government has proven that the defendant conspired to defraud the United States or willfully attempted to commit tax evasion, or whether the defendant acted in good faith, you must consider all of the evidence received in the case bearing on the defendant's state of mind. A person who acts on a belief or opinion honestly held is not punishable merely because that belief or opinion turns out to be incorrect or wrong.
>
> The burden of proving good faith does not rest with the defendant because the

7

> defendant has no obligation to prove anything to you. The government has the burden of proving to you beyond a reasonable doubt that the defendant acted willfully. If the evidence in the case leaves you with a reasonable doubt as to whether the defendant acted in good faith or acted willfully in an attempt to evade or defeat a tax, or file a fraudulent tax return, or conspire to do so, you must find the defendant not guilty of that charge.

The jury instructions therefore could not have left any doubt in the mind of a reasonable juror as to what willfulness or good faith means, and which party had the burden of showing willfulness or a lack of good faith. "[T]he instructions as a whole" were not "misleading or inadequate to guide the jury's deliberation." *Frega*, 179 F.3d at 806 n.16.

### 2. Conspiracy instructions

Defendant next contends that "[s]everal of the instructions were improperly given because they misstated the scope of the conspiracy alleged in the indictment." Mot. at 16:14-15. The instructions suggested to the jurors, defendant argues, that they could find defendant guilty of a conspiracy with multiple co-conspirators, even if they only found him guilty of a conspiracy with just one other person. The Court disagrees. The Court was not required, as defendant suggests, to describe to the jury how the government intended to prove the elements of the conspiracy. It is up to the parties to show, and the jury to decide, how and if the facts presented fulfill the required legal elements. The Court is required in the jury instructions only to "accurately define the essential elements of the offense charged." 1-630 Moore's Federal Practice – Criminal Procedure § 630.02 (2006). The instructions here contained an accurate and comprehensive description of the law of conspiracy, and included all of the required elements; defendant does not show otherwise.

### C. Limitations on the questioning of defendant's expert psychologist, Dr. Berg

Defendant next argues that the Court improperly limited the testimony of defendant's psychologist, Dr. Paul Berg. Specifically, the Court rejected defendant's request to ask Dr. Berg:

1. Whether, based on Dr. Berg's evaluation of Lewis, through the interviews and testing, Dr. Berg was able to reach an opinion regarding how a person with Lewis's particular mental characteristics would act in a given set of circumstances such as, if that individual found himself being invited by his father to join what he perceived to be a prestigious group.

8

2.     If a group held itself out to be religious and moral and the leaders of the group professed to be authorities in their fields, would a person with Lewis's particular mental characteristics be particularly influenced by such a group.

3.     If such a group later dissolved, what effect would that have on an individual with Lewis's particular mental characteristics.

Mot. at 17:21-18:6 (citing RT). The Court prohibited these questions because the proposed answers would have approached testifying to the ultimate facts reserved for the jury, and because the proposed testimony would be impermissible character evidence under Federal Rule of Evidence 404(a). *See* RT at 683:24-684:8.

All three of the questions sought answers that made the same general points: (1) that defendant was highly susceptible to being influenced by his father, and other figures and groups perceived to have authority and prestige; and (2) that he needed to be part of a group. Despite the Court's rejection of the three disputed questions, Dr. Berg was able to give ample testimony on these points. According to defendant's own summary, Dr. Berg testified at trial:

> that Lewis was a person who would be susceptible to appeals from any source that "held itself out and convinced him that they were of some higher moral authority, some higher professional authority"; that "[t]hey became essentially his daddy, the same way a child might look to their father." In particular, Lewis has a need to be "plugged in" and he is "not okay" without being hooked up to a group. The groups that are particularly alluring to Lewis are those with religious, professional, familial or community overtones. . . . The psychological testing Dr. Berg performed on Lewis showed that Lewis is quite "naive," and believes in the honesty and altruism of others and is susceptible to following them. Correspondingly, Lewis has a need to have authority in his life because he does not trust his own judgments. He will select an authority, follow that authority, and, if "that source of strength and definition goes away" Lewis will look for a substitute.

Mot. at 9:5-20 (citations to Reporter's Transcript omitted). Dr. Berg was thus able to testify to all of the personality and character traits that defendant now complains were not presented to the jury because of exclusion of these three questions. The jury fully considered and weighed this evidence. The Court's prohibition of these questions therefore had no prejudicial effect on defendant.

### D.     Limitations on the questioning of Dr. Ron Carroll

Defendant also contends that the Court should not have prevented Dr. Ron Carroll from testifying about his inability to change the mind of his brother, Donn Carroll, regarding the legality of

9

the Tower system. This testimony, according to defendants, would have shown that Donn Carroll had a subjective good faith belief in the legality of the Tower member's activities. Donn Carroll's subjective good faith belief would have been evidence of Lewis' good faith belief.

As an initial matter, the Court notes that this evidence was of little, if any, probative value. Dr. Carroll's testimony would only have been circumstantial evidence of his brother's state of mind, which the jury would feel free to disregard. Furthermore, evidence of one Tower member's state of mind provides only weak, circumstantial evidence of other members' states of mind. The questions' probative value therefore was almost certainly outweighed by the likelihood that they would have confused the issues and wasted time. Moreover, because of their limited probative value, exclusion of these questions was of little, if any, prejudice to defendant.

Moreover, defendant fails to establish that the Court's rejection of this line of questioning, on hearsay grounds, was unwarranted. This line of questioning revolved around Dr. Carroll's opinion of his brother's state of mind – whether his brother had a "good faith belief," or had "changed his mind." Defendant now claims that such testimony would have been admissible under Rule 803(1). Rule 803(1) provides an exception to the hearsay rule for "present sense impression," i.e., a contemporaneous statement by a declarant describing an event or condition. Defendant fails to explain how Dr. Carroll's speculative testimony would have qualified as evidence of his brother's present sense impression under this rule. Defendant states that "Lewis was entitled to present . . . that there were other people, like Lewis himself, who had not figured out that the Tower program was suspect." Dr. Carroll's testimony could not have established such evidence, to any significant extent, without violating the hearsay rule. The Court therefore properly excluded the line of questioning.

### E. Peremptory challenge

During voir dire, the Court sustained defendant's *Batson* challenge to the government's striking of the only two African-American jurors on the panel. Defendant now argues that the Court did not properly remedy the government's constitutional violation, because though the Court reinstated one of the jurors, it also credited back the peremptory strike to the government. Under *United States v. Ramirez-Martinez*, 273 F.3d 903, 910 (9th Cir. 2001), the Court's actions were a wholly adequate

remedy for the *Batson* violation. The fact that the *Batson* violation in *Ramirez* was a "close case" in the eyes of the district court does not distinguish it from the instant case. The question in *Ramirez* was the appropriateness of the remedy for a *Batson* violation; the Ninth Circuit clearly ruled that reinstating the juror, and reinstating the peremptory strike, was fully appropriate and within the discretion of the district court. *See id.*

**F.     Variation between the proof at trial at the charges in the indictment**

Finally, defendant argues that the government charged defendant with participation in a broad conspiracy, but only presented evidence of participation in a narrow one. Variance between an indictment and the proof presented at trial is unconstitutional and requires a new trial if the variance prejudices the defendant's substantial rights. *United States v. Morse*, 785 F.2d 771, 775 (9th Cir. 1986) (citing *United States v. Kenny*, 645 F.2d 1323, 1334 (9th Cir. 1981).

First, as discussed above, there was no variance between the charge and the evidence presented at trial. Furthermore, even if there were variance, defendant was not prejudiced. "Such prejudice may result in three ways: 1) inadequate opportunity to prepare a defense and exposure to unanticipated evidence at trial; 2) deprivation of the right to be tried only on charges presented in an indictment returned by a grand jury; and 3) exposure to prejudicial evidentiary spillover." *Id.* Defendant argues that he was prejudiced in all three ways here. The Court disagrees. All three of the prejudices contemplate situations in which a defendant is "surprised" at trial with new evidence or a new theory. That the theory ultimately presented is less ambitious than that anticipated would not leave a defendant unprepared. Regardless, as discussed above, the government provided sufficient evidence to allow the jury to find that defendant participated in a conspiracy with the other Temple members.

**IT IS SO ORDERED.**

Dated: February 6, 2007

SUSAN ILLSTON
United States District Judge

11